IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE VALENTIN ROLDAN, | : Civ. No. 1:25-CV-1449 |
| | : |
| Plaintiff, | : |
| | : (Judge Mehalchick) |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security, | : |
| | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

## I.     Introduction

Marie Valentin Roldan[1] filed applications under Titles II and XVI

of the Social Security Act for disability insurance benefits and

supplemental security income on May 30, 2017.  Following a hearing

before an Administrative Law Judge ("ALJ"), the ALJ found that

Valentin was not disabled at any time from her alleged onset date of

disability, January 16, 2016, through the date of the ALJ's decision, May

14, 2019.[2]  After the Appeals Council ("AC") denied the plaintiff's request

for review, Valentin filed an action in this court, and the matter was

---

[1] The plaintiff's treatment notes refer to the plaintiff as Marie Valentin,
rather than Roldan, and so we will do the same.
[2] Tr. 39-50.

remanded for a new hearing before a different ALJ.[3]  Specifically, the district court found that the ALJ did not properly or adequately consider the plaintiff's fibromyalgia.[4]

After a second hearing before a new ALJ, the ALJ similarly found that Valentin was not disabled from her alleged onset date through October 21, 2021, when Valentin returned to substantial gainful activity.[5]  Valentin now appeals that decision, arguing the ALJ's decision is not supported by substantial evidence.  After a review of the record, we agree and conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we recommend that the court remand this matter for further consideration by the Commissioner.

## II.  Statement of Facts and of the Case

On May 30, 2017, Marie Valentin applied for disability insurance benefits and supplemental security income, alleging disability due to various   physical   and   mental   health   impairments,   including

---

[3] Tr. 1347-54, 1359-1405.
[4] Tr. 1381-1404.
[5] Tr. 1265-89.

2

fibromyalgia.[6]  Valentin was 44 years old at the time of her alleged onset of disability, had at least a high school education, and had no past relevant work.[7]

The medical records of Valentin's impairments[8] revealed that during the relevant period, Valentin treated for chronic pain with various providers.  Valentin underwent multiple imaging studies relative to her chronic pain, including an EMG in September of 2016 after she complained of lower back pain and intermittent tingling in her hands.[9] The EMG revealed normal findings and no evidence of neuropathy or radiculopathy.[10]  In October of 2016, Valentin presented to her internal medicine provider complaining of pain in her abdomen, legs, and lower back.[11]  She reported no improvement from medication or physical

---

[6] Tr. 125-26.
[7] Tr. 1280-81.
[8] We limit our discussion of Valentin's medical records to records of her physical impairments, as we are recommending a remand on the basis of the ALJ's treatment of the opinion evidence relative to Valentin's fibromyalgia.
[9] Tr. 770.
[10] *Id.*
[11] Tr. 452.

therapy.[12] Valentin underwent x-rays and MRIs during this time, which were similarly unremarkable.[13]

Valentin began physical therapy in December of 2016 for her myofascial pain syndrome and rotator cuff calcific tendonitis.[14] She reported constant pain radiating from her neck to her left upper extremity.[15] It was noted that Valentin had not worked in roughly one year, and that she was sedentary most days while her husband helped her with things around the house.[16] Valentin was discharged from physical therapy in February of 2017, at which time it was noted she experienced some improvement in her neck pain but her left-sided radiculopathy was unchanged.[17]

In February, at an orthopedic consultation, Valentin reported neck and back pain radiating into her upper extremities with associated numbness and tingling.[18] It was noted Valentin appeared to have

---

[12] *Id.*
[13] Tr. 771, 778-79.
[14] Tr. 374.
[15] *Id.*
[16] *Id.*
[17] Tr. 365.
[18] *Id.*

myofascial pain from her cervical and thoracic spine, but that her imaging failed to show any signs of neuropathy or radiculopathy.[19] A physical examination revealed mild to moderate degree of paraspinal muscle spasms, restrictions in her overall range of motion, blunted deep tendon reflexes in her upper extremity, and mild tenderness at certain joints.[20] The provider referred Valentin to the spine rehabilitative clinic.[21]

Valentin presented to the pain clinic at Penn State Hershey Medical Center in April, where she reported sharp, burning, and constant all over pain.[22] The provider noted the multiple negative imaging studies, but on examination, Valentin exhibited generalized diffuse tenderness in her cervical, lumbar, and thoracic spine, as well as her SI joints bilaterally.[23] She had a positive straight leg raise test and positive facet loading, but she exhibited 5/5 strength and intact sensation.[24] The

---

[19] Tr. 398.
[20] Tr. 403.
[21] Tr. 398.
[22] Tr. 670.
[23] Tr. 670-71.
[24] Tr. 671.

provider indicated that Valentin's diffuse pain was "most likely fibromyalgia," and started her on Cymbalta.[25] Later in April, Valentin presented to Penn State Orthopedics for her chronic pain, at which time it was noted she had previously undergone injections and physical therapy with no benefit.[26] She reported weakness and fatigue in her upper extremities.[27] On examination, she ambulated independently and without difficulty but exhibited increased pain with cervical flexion, rotation, and side bending.[28] She also exhibited full strength and intact sensation in her upper extremities.[29] The provider reasoned that "there is a very strong chance she does have fibromyalgia" and ordered an MRI and referred her to rheumatology.[30] The results of the cervical MRI revealed a slightly bulging disc but no evidence of nerve root or central cord compression.[31]

---

[25] Tr. 672.
[26] Tr. 664.
[27] *Id.*
[28] *Id.*
[29] Tr. 665.
[30] *Id.*
[31] Tr. 651.

Treatment notes from WellSpan Family Medicine in May of 2017 indicated that Valentin was still experiencing chronic pain, and her medications were not helpful.[32]  On examination, her lumbar spine was tender even to light touch, and Valentin "was almost crying with mild pressure[.]"[33]  In June of 2017, Valentin began treating with Dr. Sowmya Surapaneni, M.D., at Penn State Rheumatology.[34]  She reported fatigue, malaise, and burning pain, and it was noted the pain clinic thought she had fibromyalgia.[35]  A physical examination revealed a normal gait, diffuse lumbar and SI joint tenderness to palpation, and 16/18 fibromyalgia tender points with allodynia.[36]  Dr. Surapaneni ordered additional imaging studies and started Valentin on a trial of prednisone.[37]

In July, Valentin reported that she had good and bad days on the prednisone, but that it caused her difficulty sleeping.[38]  She continued to

---

[32] Tr. 748.
[33] Tr. 752.
[34] Tr. 617.
[35] *Id.*
[36] Tr. 619.
[37] Tr. 620-21.
[38] Tr. 690-91.

have generalized pain, worse in her lower back.[39]   Her physical examination was similar to the previous month, in that she exhibited a normal gait, diffuse tenderness, 16/18 tender points, but no limited range of motion or overt swelling.[40]  Dr. Surapaneni noted there was a '[s]trong suggestion of fibromyalgia on examination."[41]   The imaging obtained around this time showed no findings of inflammatory arthropathy.[42]

Valentin reported to WellSpan Family Medicine in August that she continued to have issues with her fibromyalgia, including lower back pain that interrupted her sleep.[43]  Around this time, she was seen at the pain clinic at Hershey, where she reported continued lower back pain radiating to her bilateral knees.[44]  A physical examination revealed 4/5 and 5/5 strength in her extremities, decreased sensation, a normal gait, positive facet loading bilaterally, positive straight leg raise testing, and tenderness upon palpation to the lumbar and SI joint regions.[45]   In

---

[39] *Id.*
[40] Tr. 692.
[41] Tr. 696.
[42] Tr. 702-03.
[43] Tr. 717.
[44] Tr. 885.
[45] Tr. 886.

November, Valentin was referred to physical therapy for her bilateral leg pain and difficulty walking, as her physical examination was normal.[46]

Valentin followed up with Rheumatology in January of 2018, at which time it was noted that her diffuse pain continued despite recent imaging being completely normal, and that she received no real benefit from the interventions she had tried.[47]  On examination, she was diffusely tender all over, including at her lumbar and SI joints, she exhibited 16/18 tender points, and she had a normal gait with no limited range of motion in her extremities.[48]  The provider noted that Valentin had a fibromyalgia component with lower back localizing features.[49]  In March and April of 2018, Valentin continued to report lower back pain despite her imaging being unremarkable.[50]

Dr. Surapaneni filled out a fibromyalgia medical source statement in May of 2018.[51]  Dr. Surapaneni opined that due to Valentin's

---

[46] Tr. 950.
[47] Tr. 1002.
[48] Tr. 1103.
[49] *Id.*
[50] Tr. 911-14, 1012, 1030.
[51] Tr. 899-903.

fibromyalgia symptoms, she would need a job that permits shifting positions at will, additional unscheduled breaks, and the ability to elevate her legs for 20% of the day.[52]  Dr. Surapaneni also opined that Valentin would have good days and bad days, would be off task more than 25% of the time, would be absent more than four days per month, and would be incapable of even low stress work.[53]

That same month, Dr. Surapaneni's notes indicated that Valentin's pain was worsening due to her fibromyalgia and osteoarthritis.[54]  On physical examination, Valentin exhibited diffuse tenderness all over to touch but no significant focal deficits or significant loss of muscle strength.[55]   Dr. Surapaneni noted that her imaging was mostly unremarkable, but that "[s]he definitely seems to have a huge component of fibromyalgia[.]"[56]   In November, Dr. Surapaneni noted that Valentin was feeling about the same, with continued pain in her lower back and

---

[52] Tr. 902.
[53] Tr. 903.
[54] Tr. 1122.
[55] Tr. 1123-24.
[56] *Id.*

left leg with associated weakness.[57] On examination, Valentin had 18/18 fibromyalgia tender points with diffuse tenderness all over and subtly decreased strength in her left leg.[58] Her Lyrica prescription, which she thought helped some, was continued, and she was referred for aquatic therapy.[59]

Valentin began aquatic therapy in June of 2019.[60] Her initial evaluation revealed she had increased pain and bilateral radicular symptoms, and she demonstrated pain and muscle weakness in her lower extremities and range of motion restrictions.[61] These notes indicated that she was independent with her activities of daily living but received help from her family.[62] Throughout June, Valentin's therapy notes showed that she had decreased lower extremity mobility, but she increased her tolerance for therapy with each session.[63] Additionally, she

---

[57] Tr. 1143.
[58] Tr. 1144.
[59] *Id.*
[60] Tr. 1737.
[61] Tr. 1738.
[62] Tr. 1739.
[63] Tr. 1742-49.

11

reported decreased pain throughout her therapy sessions.[64]  In July, it was noted that while her lower back and leg pain was reduced, she still experienced weakness in her lower extremities.[65]  It was further noted that she continued to have difficulty with walking and standing, as well as household chores.[66]  She was discharged from aquatic therapy at the end of July.[67]

Toward the end of the alleged disability period, in June of 2021, Valentin continued to report radiating pain from her neck into her upper extremities.[68]  Spasms and tenderness were present on examination.[69] She also presented to the emergency room in August of 2021, complaining of back pain that worsened when she moved, twisted, or bended.[70] Valentin testified at the second hearing that she went back to work in October of 2021.[71]

---

[64] Tr. 1746, 1748.
[65] Tr. 1752.
[66] Tr. 1753.
[67] Tr. 1757.
[68] Tr. 1869.
[69] *Id.*
[70] Tr. 1942.
[71] Tr. 1298.

It is against the backdrop of this record that an ALJ held a second hearing on Valentin's disability application, at which Valentin and a Vocational Expert testified.[72]  Following this hearing, the ALJ issued a decision on July 2, 2024, denying Valentin's application for benefits.[73]  In that decision, the ALJ first concluded that Valentin had not engaged in substantial gainful activity from her alleged onset date, January 16, 2016, until October 21, 2021, when she returned to substantial gainful activity.[74]  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Valentin suffered from the following severe impairments: fibromyalgia, lumbar radiculopathy, major depressive disorder, and unspecified anxiety disorder.[75]  At Step 3 the ALJ determined that Valentin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[76]

---

[72] Tr. 1290-1322.

[73] Tr. 1271-82.

[74] Tr. 1274.

[75] *Id.*

[76] Tr. 1275-76.

13

Between Steps 3 and 4 the ALJ concluded that Valentin retained the residual functional capacity ("RFC") to:

[P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders/ropes/scaffolds; is limited to the performance of simple, routine, repetitive tasks; cannot work at a production rate pace; can occasionally interact with the public, coworkers, and supervisors; and can tolerate no more than few workplace changes.[77]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Valentin's reported symptoms.  Specifically, with respect to the medical opinion evidence regarding Valentin's physical impairments, the ALJ considered Dr. Surapaneni's May 2018 opinion and found it unpersuasive.[78]  The ALJ found that the restrictions were not consistent with Dr. Surapaneni's notes showing no significant focal deficits or loss of muscle strength.[79]  He further concluded that the opinion was not

---

[77] Tr. 1276.

[78] Tr. 1279-80.

[79] Tr. 1279.

14

supported by Valentin's physical therapy records that showed she was independent with her activities of daily living.[80]

The ALJ also considered the opinion of Dr. Legaspi, the state agency medical consultant, and found this opinion unpersuasive.[81] Dr. Legaspi opined in October of 2017 that Valentin could perform a range of medium work with no additional postural limitations.[82] The ALJ reasoned that the objective record, including Valetin's diagnosis of fibromyalgia, rendered Valentin more limited than Dr. Legaspi assessed.[83]

The ALJ also found that Valentin's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[84] Valentin testified at the initial hearing that she experienced constant pain from her fibromyalgia, made worse with prolonged walking and sitting, and that she had

---

[80] Tr. 1279-80.
[81] Tr. 1279.
[82] Tr. 132-34.
[83] Tr. 1279.
[84] Tr. 1278-79.

difficulty with personal care and household chores.[85]   At the second hearing, Valentin reported that she went back to work in October of 2021, and that she was not as limited as she was during the alleged disability period.[86]

The ALJ ultimately found Valentin's testimony to be inconsistent with the objective clinical findings.[87]  The ALJ seemingly relied on the objective findings in the record of no significant focal neurological deficits and no significant loss of muscle strength, as well as physical therapy notations that Valentin was independent in her activities of daily living.[88] Ultimately, the ALJ found that Valentin was not as limited as she alleged.[89]

The ALJ then found at Step 4 that Valentin had no past relevant work but found at Step 5 that she could perform the occupations of a marker, routing clerk, and storage rental clerk.[90]  Accordingly, the ALJ

---

[85] Tr. 66-68, 72-78.
[86] Tr. 1298, 1304.
[87] Tr.
[88] Tr. 1278.
[89] *Id.*
[90] Tr. 1280-81.

found that Valentin had not met the stringent standard prescribed for disability benefits and denied her claim.[91]

This appeal followed.[92]   On appeal, Valentin challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence.   Specifically, Valentin contends, *inter alia*, that the ALJ erred in his consideration of Dr. Surapaneni's opinion regarding Valentin's limitations from her fibromyalgia.   This case is fully briefed and is therefore ripe for resolution.   For the reasons set forth below, we will recommend that the court remand this matter for further consideration.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[93]   Substantial evidence "does not mean a large or considerable amount of evidence, but

---

[91] Tr. 1282.

[92] Doc. 1.

[93] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[94]  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[95]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[96]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[97]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[98]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

---

[94] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[95] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[96] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[97] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[98] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[99]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[100]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[101]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[102]

---

[99] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[100] Id.
[101] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").
[102] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

19

Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[103] This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[104] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[105]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

---

[103] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[104] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[105] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

20

mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[106]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[107]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[108]

In making this determination, the ALJ follows a five-step evaluation.[109]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able

---

[106] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

[107] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

[108] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

[109] 20 C.F.R. §§404.1520(a), 416.920(a).

to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[110]

Between Steps 3 and 4, the ALJ determines the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[111]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[112]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[113]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[114]  If met, the burden then shifts to

---

[110] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[111] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[112] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[113] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[114] *Mason*, 994 F.2d at 1064.

22

the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[115]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[116] Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[117]

---

[115] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[116] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[117] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[118] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[119]  Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[120]

---

[118] *Biller*, 962 F. Supp. 2d at 778–79.
[119] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[120] *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[121]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[122]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[123]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[124]

---

[121] 20 C.F.R. § 404.1520c(c).
[122] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).
[123] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[124] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[125]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[126]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[127]    On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[128]

---

[125] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[126] *Mason*, 994 F.2d at 1066.
[127] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[128] *Cummings*, 129 F. Supp. 3d at 214–15.

### D. This Case Should Be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[129] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[130]  After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Valentin argues that the ALJ failed to properly consider Dr. Surapaneni's opinion, and further, failed to adequately explain why he discounted Dr. Surapaneni's limitations.  After consideration, we agree that the ALJ failed to adequately explain his reasoning for finding this opinion unpersuasive, and a remand is required.

We reach this conclusion mindful that fibromyalgia "poses special circumstances in the social security arena."[131]  As one court in this district has aptly summarized:

---

[129] *Cotter*, 642 F.2d at 704.

[130] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

[131] *Watkins v. Colvin,* 2016 WL 4679015, at *8 (M.D Pa. Sept. 7, 2016) (citing *Burns v. Comm'r of Soc. Sec.*, 2016 WL 344729, at *4 (W.D. Pa. Jan. 28, 2016)).

27

[I]n a disability determination involving fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement. *See, e.g., Green–Younger*, 335 F.3d at 108. Similarly, unverified subjective complaints consistent with the disease cannot be discredited for lack of objective evidence. *Id.* Rather, a doctor's diagnosis of fibromyalgia bolsters the credibility of the plaintiff's complaints. *Id.* "In stark contrast to the unremitting pain of which fibrositis (fibromyalgia) patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Lisa v. Secretary of the Dep't of Health and Human Services*, 940 F.2d 40, 45 (2d Cir. 1991). "Because objective tests may not be able to verify a diagnosis of fibromyalgia, the reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination." *Perl v. Barnhart*, No. 03–4580, 2005 WL 579879, at *3 (E.D. Pa. Mar. 10, 2004) (citing *Green–Younger*, 335 F.3d at 108).[132]

Here, the ALJ explicitly relied on the absence of objective findings relating to the plaintiff's fibromyalgia pain to explain why he found Dr. Surapaneni's opinion unpersuasive. Specifically, the ALJ reasoned that Dr. Surapaneni's opinion was inconsistent with the doctor's notes because "her neurological examination does not show any significant focal deficits and her musculoskeletal examination did not reveal any

---

[132] *Foley v. Barnhart*, 432 F. Supp. 2d 465, 480 (M.D. Pa. 2005).

significant loss of muscle strength."[133]    This reliance on the lack of objective findings is error, as explained above, and overlooks treatment notes throughout the relevant period that consistently documented the plaintiff's complaints of fibromyalgia pain despite her objectively unremarkable findings and imaging.[134]    In fact, around the time this opinion was given, Dr. Surapaneni's notes stated that Valentin "definitely seems to have a huge component of fibromyalgia" despite her imaging being unremarkable.[135]    Thus, while the ALJ may have had other reasons for finding this opinion unpersuasive, he did not explain those reasons in the decision.

Further, while it appears the ALJ found this opinion poorly supported by physical therapy notes indicating that the plaintiff was independent in her activities of daily living, as the plaintiff points out, the ALJ may have mischaracterized these treatment notes.    Indeed, the

---

[133] Tr. 1279.

[134] *See e.g.*, Tr. 690 (noting diffuse tenderness over all joints but no swelling or limited range of motion); Tr. 1122-23 (documenting the plaintiff's ongoing, increased pain and fatigue, and noting examination findings of diffuse tenderness despite imaging being unremarkable).

[135] Tr. 1123-24.

ALJ asserts that these notes showed the plaintiff was "fully independent" with her activities of daily living but disregards the next notation in the same record, indicating that the plaintiff received help from her family.[136] This mischaracterization of the treatment records further undermines the ALJ's consideration of Dr. Surapaneni's opinion. Thus, we cannot conclude that the treatment of this opinion evidence is supported by substantial evidence.

Accordingly, a remand is required for further consideration of these issues.[137] While we reach this conclusion, we note that nothing in this Report and Recommendation should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task should be left to the ALJ on remand.

IV. Recommendation

For the foregoing reasons, IT IS RECOMMENDED THAT the decision of the Commissioner in this case be REMANDED for further consideration.

---

[136] *See* Tr. 1278 (citing Tr. 1756).

[137] Because we are recommending remand on this specific issue, we decline to reach the plaintiff's remaining arguments.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of May 2026.

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge
